Good morning, Your Honors. I would like to reserve three minutes of time for rebuttal. Great. Good morning, Your Honors. May it please the Court. Chelsea Haley Nelson on behalf of petitioners Jose Mayarito Perez-Castillo and Gladys Funes Alvarado. The agency below found no incident of persecution in which Mr. Perez-Castillo participated and that membership in a group under the asylum and withholding framework was enough to raise the bar. That was error for three reasons. Noguchi's reading placing the initial burden on petitioner to disprove the bar was error. Second, where the government had the initial burden, mere membership is not enough to invoke the persecutor bar. And alternatively, if the Court finds that there was proper raising of the bar in this case, it was error to find that Mr. Perez-Castillo could not rebut the bar or it's undisputed that he was forcibly recruited into the Salvadorian military. Now, if the Court — But excuse me a minute. What about the finding that is not challenged, that he was not credible, and that that's the reason he could not rebut the bar? It's true that the immigration judge found that he was not credible. However, one — as I stated, one point that is not in dispute is that he was forcibly recruited into the Salvadorian military. So despite the fact that the — Well, he was — he did his compulsory military service. I mean, he described it as a rather abrupt drafting into the service, but later he also said, I was — this — everybody does compulsory military service. This was mine. Is compulsory military service being drafted into the military enough to show that he was forcibly required to do this? We believe that it does based on the circumstances that he testified to. But aside from that, we're bound by the finding that the immigration judge made, which was that he was forcibly recruited into the military and that that evidence, that finding — there was no evidence, sorry, to the contrary or to contradict that. And so that finding is one that was affirmed by the board and with all the other findings made by the immigration judge. So despite the adverse credibility finding, we're left still with that finding by the immigration judge that — Can you remind me where that site is? I just — Yes. I'm forgetting that right now. No, that's okay. I was actually just looking for it, Your Honor. I can in one second. So the immigration judge found that he, quote, joined the military in early 1981. Consistently, he has claimed that he was forcibly recruited, and there has been no contradictory evidence on that issue. That's at AR-77. And the board affirmed the IJ's conclusion, including that one. So despite the adverse credibility finding, this still stands. This has been undisputed. It's not been challenged at any point. And as the immigration judge said, there was no contradictory evidence in the record as to that issue. So neither the IJ nor the board reviewed that finding under duress. So that's one of the arguments. So let's assume that's true. That doesn't necessarily mean that he didn't — that doesn't then allow him to continue to engage in what might be persecuting conduct while in the military. Correct. But I think what the issue here is and the argument that we raise is that there was never a review or consideration of a duress defense in this particular case. That's my next question. What do you think the status is of a duress defense? So we argue, Your Honors, we raised in our 28-J letter to the Court that Loper-Bright changes the sort of framework of the Court's analysis in this case. All the briefing was previously done under a Chevron framework. But we believe that post-Loper-Bright the Court can independently review the persecutor bar and that a proper interpretation includes a duress defense. Don't we have to wait for the AG to decide? Is it — and I always mispronounce. Is it Naguise? Naguise. Naguise. Naguise III. Don't we have to wait for that? Well, that was the basis of our motion to hold this case in abeyance until there was an agency decision on Naguise III so that this Court could have clear guidance, not only on the burden of proof issue that we argue but also specifically on duress because we think that is directly on point. However, in post-Loper-Bright, again, we believe that the Court can interpret the persecutor bar and that a proper interpretation does include a duress defense. Well, admittedly, it was before Loper-Bright, but the Supreme Court sent it back. Correct. In Naguise originally and said, you can't rely on Fedorenko. You can consider Fedorenko. But you, immigration judge, Bureau of Immigration opposed, you have to decide if there's a duress defense under this particular statute. And it's still unclear. So why would, if the Supreme Court wanted the immigration courts to decide in the first instance whether there was a duress defense, why would we go ahead and decide whether there is or is not one just because of Loper-Bright? Because I believe that the Court has the ability to independently evaluate the statute and regulation. It doesn't have to defer and no longer needs to defer to the agency post-Loper-Bright. But wouldn't we want to know what they think and why they think it? Certainly. And if the Court believes that that is true, that the proper resolution of this case is to wait for the agency to provide some clear instruction as to the duress defense under the person? Well, it just might be instructive to us whether or not we have to wait. It seems like it would be helpful. If the Court believes that it would be helpful, then the proper remedy would be to remand or, again, to hold this in abeyance. At this point, you know, if I may, as to the duress defense, if the Court agrees that it can interpret, then I would point the Court to the amicus brief that was filed by scholars of international refugee law for substantive argument about statutory interpretation and that proper interpretation leads to a duress defense. I would also point out, as Your Honor stated, the Supreme Court did remand to the agency to specifically address whether a duress defense exists. And originally, the agency found that a duress defense exists. That's what we call Naguse 1 in the 2018 decision. That's also a good roadmap for statutory interpretation and that the bar includes a duress defense. And I would state that the Naguse 2 argument, which is the AG's decision in 2020, finding that duress defense does not exist in the bar, is an incorrect interpretation. One of the core arguments of the AG there was that the Supreme Court — I'm sorry. One of the core arguments there was that no duress defense exists because the word duress is not used or the term voluntary is not used in the persecutor bar. But that completely ignores the Supreme Court's decision when it originally remanded for reassessment that said absence of the word duress is not dispositive of a finding of a duress defense in the persecutor bar. And as we mentioned earlier, importantly here in this case, it's undisputed that Mr. Perez-Castillo was forcibly recruited into the military. We have that from the immigration judge's finding, which was affirmed by the board. Neither the immigration judge or the board ever assessed the duress defense. It wasn't raised or considered or decided by the agency. The board specifically states that Mr. Perez-Castillo is unable to rebut the bar due to a duress defense because Naguse 2 found there was no exception for duress. Let me switch subjects for a moment. The immigration judge found three bases for denying relief under NACARA. And when the board considered it, they only talked about two of them, but there's a third one. And she found that because Mr. Perez-Castillo committed perjury, that he was prohibited from being granted NACARA relief because he cannot demonstrate good moral character. Board didn't discuss it, but the board did cite Padeno, which basically says we agree with the immigration judge. Could we rely on that finding, not mentioned by the board, to find that he's not entitled to relief because he doesn't have good moral character based on perjury? I don't believe that the court can, Your Honor. The board affirmed the immigration judge's decision under Burbano, but it also specifically cited the specific bases upon which it was relying, and it didn't include that. However, that's also not a basis or a decision that this court could necessarily review. I think the argument that we're raising here is that there are legal errors that were committed by the agency below that require reversal and remand. So whether or not the court can get to the good moral character assessment is not an issue necessarily before this court. If I may get to a second argument, which is that we believe that the agency below based its assessment that the persecutor bar was sufficiently raised in this case based on mere membership, and in this case, Mr. Perez-Castillo's membership or connection to the Atenal was unclear or inconclusive at best. Crucially, the immigration judge didn't find any persecutory act in which Mr. Perez-Castillo participated. That's at AR 84. As there's no specific act of persecution in which he participated, it's impossible to ascertain how he was involved or his personal involvement in any persecutory act and if that amounted to purposeful assistance. We also can't get to nexus because there's no act to tie it to. And that's required under the persecutor bar. We must have an act. We must have nexus to a protected ground. And then we must show that there's genuine assistance or purposeful involvement in the persecution. But more significantly, as I mentioned, despite recognizing that the issue of whether or not Mr. Perez-Castillo was assigned to the Atenal was important at AR 77, the immigration judge did not definitively find that he was, in fact, a member. The board, however, assumes that there was a definitive finding by the immigration judge in affirming the IJ's conclusion and stating that the persecutor bar was raised, quote, based on petitioner's membership in the Atenal battalion. At most, we have on the record an unclear relationship of Mr. Perez-Castillo to the Atenal. He was either on loan or a member for unknown periods of time. There's no specified location. But ultimately, it remains unclear. But if we find that there was a sufficient amount of evidence in the record to raise the bar, he has the burden of proving he wasn't engaged in persecution. Correct? Correct. He would have the burden to then rebut it. And he didn't. So you're asking about all these specific things. But the government doesn't have to prove all of those specific things. They just have to show that there's enough evidence in the record to raise the persecutor's  And clearly, Mr. Perez-Castillo knew that that was what the hearing was about, for him to rebut the persecutor's bar, to prove that he did not was not a persecutor. I think that that gets to two points. First, the first point that we were making in this argument, that it's a burden of proof issue and that the burden is on the government. And we argue that in this particular case, the immigration judge may have muddled the burden of proof, but the board specifically, in reliance on Neguse 2, jumped over the government's initial burden and placed the burden squarely on Mr. Perez-Castillo to rebut the bar. That was a legal error. There wasn't enough evidence in this record, as we say, based on mere membership to have raised the bar. And that's the basis of the board's decision, entirely based on his membership in this group and then implied actions of that group. But then I also think it gets back to the duress. If it's undisputed that Mr. Perez-Castillo was forcibly recruited into the military, then the court has to grapple with whether a duress defense exists. The agency below never dealt with that, never addressed it, never decided. And so in order to resolve this issue, it would need to remand to the agency to address that in the first instance. I see that I only have a minute and a half remaining. Do either of you have any other questions right now? Okay. We'll put two minutes on the clock for rebuttal. Thank you. Thank you very much. Good morning. Good morning, Your Honors. May it please the Court, Stephanie Hennis for Respondent. The petitioner in this case told an immigration officer that during the 1980s, he was a member of the Atenal Battalion. This was a brutal military unit that indiscriminately mass-murdered rural citizens. This was part of a military strategy at the time to simply weed out all perceived support for the guerrillas by murdering villagers. What about the argument of counsel that he was forcibly recruited, a finding apparently supported by the record that the BIA sort of acknowledged? So I don't see anything in the record where the board specifically affirmed the IJ's forcible recruitment language. He indicated AR-77. Is that an incorrect site? AR-77. I think she's referring to AR-77 would be the immigration judge's decision. So it is true that the immigration judge found that there was forcible recruitment, but what we would need is that finding being affirmed by the Board of Immigration Appeals, and I am not aware of anything in the board's decision. That would be at AR-3 to 4 where that happens. But I also want to point out that in NAGUSI 1 where the board identified a duress exception, it did not say that forcible recruitment was what was required to show duress. They said that this was a very, very, very narrow exception, and there were five different things, all of which the applicant needed to show in order to rely on a duress defense. These are all very fact-specific. The person needed to act under an imminent threat of death, had no reasonable opportunity to escape. I won't run through all of them just because they are factual, and the adverse credibility finding in this case prevents the Petitioner from meeting any burden to show duress in this case. Well, do we — can we even get to duress? No, Your Honor. Because this — isn't it uncertain, the status of the Department of Justice's view as to whether there is a duress defense to this persecutor bar? Well, two things. One, it's not uncertain right now. While the Attorney General did recertify NAGUSI to himself, there has not been another decision, and it did not vacate the 2020 NAGUSI decision. This is — this is — the 2020 NAGUSI decision does remain good law because it hasn't been vacated. But more importantly, for purposes of this case, the Petitioner repeatedly emphasizes that the Board relied on NAGUSI when it evaluated the persecutor bar, even when the Petitioner was not credible. And there is simply no citation to NAGUSI in that portion of the Board's decision. There is one paragraph in the Board's decision where the NAGUSI decision is cited, and that is where the Board says, assuming credibility, he can't show duress because there is no duress exception to the persecutor bar. So that's actually the most important thing in this case. There's an unchallenged, unreviewable, factual issue regarding credibility. And the immigration judge not only found the Petitioner not credible, he actually made a finding that the Petitioner attempted to adjust his testimony based on what he believed would get him relief from removal.  So while the BIA, of course, cited Burbano, generally signaling that it agrees with the IJ's determination, but it, of course, does not mention the IJ's discretional — discretionary denial of the Nicara relief, are we able to remand for the BIA to take a look at that? Can we address that, or are we without any ability to address that issue now? The Court could remand if it determined that the persecutor, his — the Petitioner's inability to meet his burden to show that the persecutor bar did not apply. The Court could not just order that he be granted Nicara. There is a discretionary finding that's required. So that would be necessary if the Court determined that the persecutor bar was not sufficiently raised in this case. However, I would like to point out that there were some specific immigration judge findings in this case. And I know the Petitioner maintains that there were not findings about the — his immigration judge does say that the Petitioner was part of that battalion between 1981 and 83. He also said that the Petitioner was issued a weapon, an M16, that he was in combat, that he fired during combat, and that he witnessed the results of military atrocities, which included seeing women, children, and the elderly. There's — those are factual findings that the immigration judge made. And then the immigration judge also went on to cite Exhibit 7. And Exhibit 7 provided background information about this battalion. 1981 to 1983 was the worst period for human rights abuses by this battalion. They mass-murdered civilians. The strategy was to kill all civilians. The killing sprees were so effective that they didn't take prisoners.  Let me interrupt. The Petitioner claims that the government has to show a specific incident where Mr. Perez-Castillo engaged in persecutory conduct. Do you agree? No, Your Honor. And we've — and we discussed this in our brief. As — as Your Honor was talking about this before, all that's necessary and what the — and what the agency did in this case was say there needs to be some evidence in this record, evidence to support an inference that the Petitioner was engaged in assistance in persecution. And at that point, he has the burden to show that he did not. The notion that he could meet his burden by repeatedly lying to immigration officials would — would create a perverse incentive to lie about your past involvement with organizations that were involved in persecution. But apart from that general policy notion, there's case law that also supports the government's position. The Fourth Circuit in Pastora v. Holder, we had a similar situation where the Petitioner was part of a unit that was implicated in human rights violations. Like the Petitioner in this case, he gave one version of his involvement during his Nicara interview. As he found out that that became problematic for his case, he provided a new description when he was in immigration court. And the Fourth Circuit explained that because he was part of a unit that involved — that participated in human rights violations at the time and in the place where he was a part of that, there wasn't a need for a specific persecutory event. That was enough to show that the — to indicate that the bar may apply. And then the burden shifted to him. Let me interrupt again and ask you the same question that I asked counsel for the Petitioner, and that has to do with the third basis upon which Nicara relief was denied by the immigration judge, which was not discussed by the — in the appeals decision, and that is that he committed perjury. That prohibits him from being granted Nicara relief because he's not of good moral character. What — what do we make of that when it wasn't discussed? Is that a basis upon which the government believes that the decision to deny Nicara relief can be affirmed? Well, at this juncture, I — the — the court is limited to what the board affirmed in its decision, and the board did not affirm that portion of the IJ's decision. Now, again, this would be relevant if the court were to determine that Petitioner met his burden to show that the persecutor bar did not apply, which we maintain is not the case in — in this situation. But if it was, that would be a reason for remand, because it's clear there are other aspects of the Petitioner's Nicara eligibility that have to be considered by the agency before he could be granted. Specifically including duress. The — so he does not — the government maintains that a determination as to duress does not need to be made as long as the agency upholds — as long as the board upholds the adverse credibility finding. I mean, I guess the decision on that could be, well, even if there is a duress exception, he doesn't get to establish that because his testimony is not credible. We really don't know anything about where the person — where — we don't know anything about the specific incidents that he would say he engaged in under duress because he's not been forthcoming with the immigration authorities about what he did while he was part of this battalion. But he never had a — there never was any consideration of duress because, at the time that this decision was made, there was no duress exception, according to the Department of Justice. That's — that's true, Your Honor. But again, it would be kind of an exercise in futility because he doesn't have — he's not credible, and the immigration judge has already determined that he lies in — the immigration judge actually made a factual finding that he lies based on what would allow him to get relief. So the notion that the court would need to go back to the agency to have it determine that he's lying about his involvement with this group — But I guess it's theoretically possible, at least, that — I mean, maybe unlikely, but theoretically possible that the immigration judge could find that, you know, he has some credible testimony with respect to duress, even if he wasn't testifying credibly, I don't know, with respect to everything else. I mean, I take your point, but I'm not sure that that's an impossibility, is it? Our position is that it is.  He's — and if you actually look at the credibility law — I don't know if I cited this in my brief, but when someone is found not credible, that can mean that he's not credible in all respects. So the idea that, again, there should be another opportunity for him to establish duress — And again, looking at the — I mean, this would also require him to have some sort of immigration authorities and admit everything that he did, because in order to show the duress factors that are in the 2018 BIA Ngozi decision, they are very detailed regarding, you know, a reasonable opportunity to escape or otherwise frustrate the threat of harm. And so reading the BIA's decision to Judge Thomas's point, the BIA said, We adopt and affirm the determination by the immigration judge that the respondent was not credible and that he's unable to rebut the application of the persecutor bar. So it seems to be — it might be that the BIA is making a conclusion as to his credibility generally, but it could be that he's making the credibility only as to the persecutor bar, since it's referring to that in the very next portion of the sentence. So I guess I feel like I understand what your position is here, but is it also a reasonable interpretation to say, Well, maybe they were just referring to the persecutor bar portion of it and not the credibility generally? Well, it adopted and affirmed the adverse credibility finding, and the immigration judge's adverse credibility finding was that the petitioner is a serial liar who makes up stories based on what he thinks will get him relief from removal. So I would say the board adopted and affirmed the adverse credibility finding in total. There was also the and in that sentence that you read. So the board is emphasizing that it's adopting the adverse credibility finding and that it is also adopting the analysis as to burden of proof. And I realize I have just a few seconds left, so I do want to point out that the discussion of burden of proof where the petitioner was not credible did place an initial burden on the government. Both decisions talk about how the burden shifted to the petitioner, that the government met its initial burden, and I see my time is up.  Do either of you have any other questions? Okay. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. Thank you again, Your Honors. Just briefly on the burden that the government mentioned, the board below actually did not apply the burden to the government initially as to the persecutor bar. It specifically cites to Naguse 2 to state that the petitioner had not successfully rebutted the bar. And then it also specifically cites to Naguse at 154. And 154 of Naguse discusses the burden and states that the initial burden as to the bar is not the government's. The noncitizen bears the burden of dispersing the bar's applicability. Determination is an evidentiary one that does not stem from any burden on the DHS or the government. So I think that's an incorrect statement by Respondent that both agencies applied the burden initially to the government because that's part of the board's decision in this case. As to the factual findings that the Respondent points to, it's true that the immigration judge, there is a discussion of other factual issues in the case. But starting at 102 of the record, she says the court can only find that the Respondent was in the military in El Salvador beginning in 1981. And this is where the confusion starts about his membership and was at least initially assigned to the 4th Brigade and then was either on loan to the Atenel or became a part of it when it formed, was either in and out of the battalion. So there's a lot of inconclusive language there. I don't think that that leads to a finding that he was, in fact, a member of the Atenel. And then as to the duress defense and the adverse credibility finding, I do believe that the court's reading, the understanding that the adverse credibility finding was specific to the persecutor bar, what's left is that undisputed finding by the immigration judge that he was forcefully recruited into the military. Without more by the agency, there's no discussion of a duress defense because the immigration judge found that it was not available at that time and the board found that it was precluded by Neguse 2. So if the court believes that a duress defense does exist within the bar, it needs to remand back to the agency to determine that issue in the first instance. Thank you very much. We thank both counsel today for your very helpful arguments. This case is submitted and the court is adjourned.
judges: THOMAS, MENDOZA, Bolton